(Slip Opinion)      OCTOBER TERM, 2012                    1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## OXFORD HEALTH PLANS LLC *v.* SUTTER

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 12–135.   Argued March 25, 2013—Decided June 10, 2013

Respondent Sutter, a pediatrician, provided medical services to peti-
tioner Oxford Health Plans' insureds under a fee-for-services contract
that required binding arbitration of contractual disputes.  He none-
theless filed a proposed class action in New Jersey Superior Court, al-
leging that Oxford failed to fully and promptly pay him and other
physicians with similar Oxford contracts.  On Oxford's motion, the
court compelled arbitration.  The parties agreed that the arbitrator
should decide whether their contract authorized class arbitration,
and he concluded that it did.  Oxford filed a motion in federal court to
vacate the arbitrator's decision, claiming that he had "exceeded [his]
powers" under §10(a)(4) of the Federal Arbitration Act (FAA), 9
U. S. C. §1 *et. seq.*  The District Court denied the motion, and the
Third Circuit affirmed.

   After this Court decided *Stolt-Nielsen S. A.* v. *AnimalFeeds Int'l
Corp.*, 559 U. S. 662—holding that an arbitrator may employ class
procedures only if the parties have authorized them—the arbitrator
reaffirmed his conclusion that the contract approves class arbitration.
Oxford renewed its motion to vacate that decision under §10(a)(4).
The District Court denied the motion, and the Third Circuit affirmed.

*Held*: The arbitrator's decision survives the limited judicial review al-
lowed by §10(a)(4).  Pp. 4–9.

   (a) A party seeking relief under §10(a)(4) bears a heavy burden.  "It
is not enough . . . to show that the [arbitrator] committed an error—
or even a serious error."  *Stolt-Nielsen*, 559 U. S., at 671.  Because the
parties "bargained for the arbitrator's construction of their agree-
ment," an arbitral decision "even arguably construing or applying the
contract" must stand, regardless of a court's view of its (de)merits.
*Eastern Associated Coal Corp.* v. *Mine Workers*, 531 U. S. 57, 62.

Thus, the sole question on judicial review is whether the arbitrator interpreted the parties' contract, not whether he construed it correctly. Here, the arbitrator twice did what the parties asked: He considered their contract and decided whether it reflected an agreement to permit class proceedings. That suffices to show that he did not exceed his powers under §10(a)(4). Pp. 4−6.

(b) *Stolt-Neilsen* does not support Oxford's contrary view. There, the parties stipulated that they had not reached an agreement on class arbitration, so the arbitrators did not construe the contract, and did not identify any agreement authorizing class proceedings. This Court thus found not that they had misinterpreted the contract but that they had abandoned their interpretive role. Here, in stark contrast, the arbitrator did construe the contract, and did find an agreement to permit class arbitration. So to overturn his decision, this Court would have to find that he misapprehended the parties' intent. But §10(a)(4) bars that course: It permits courts to vacate an arbitral decision only when the arbitrator strayed from his delegated task of interpreting a contract, not when he performed that task poorly. Oxford's remaining arguments go to the merits of the arbitrator's contract interpretation and are thus irrelevant under §10(a)(4). Pp. 6−9.

675 F. 3d 215, affirmed.

KAGAN, J., delivered the opinion for a unanimous Court. ALITO, J., filed a concurring opinion, in which THOMAS, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 12–135

## OXFORD HEALTH PLANS LLC, PETITIONER *v.* JOHN IVAN SUTTER

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

[June 10, 2013]

JUSTICE KAGAN delivered the opinion of the Court.

Class arbitration is a matter of consent: An arbitrator may employ class procedures only if the parties have authorized them. See *Stolt-Nielsen S. A.* v. *AnimalFeeds Int'l Corp.*, 559 U. S. 662, 684 (2010). In this case, an arbitrator found that the parties' contract provided for class arbitration. The question presented is whether in doing so he "exceeded [his] powers" under §10(a)(4) of the Federal Arbitration Act (FAA or Act), 9 U. S. C. §1 *et seq.* We conclude that the arbitrator's decision survives the limited judicial review §10(a)(4) allows.

I

Respondent John Sutter, a pediatrician, entered into a contract with petitioner Oxford Health Plans, a health insurance company. Sutter agreed to provide medical care to members of Oxford's network, and Oxford agreed to pay for those services at prescribed rates. Several years later, Sutter filed suit against Oxford in New Jersey Superior Court on behalf of himself and a proposed class of other New Jersey physicians under contract with Oxford. The complaint alleged that Oxford had failed to make full and

prompt payment to the doctors, in violation of their agreements and various state laws.

Oxford moved to compel arbitration of Sutter's claims, relying on the following clause in their contract:

> "No civil action concerning any dispute arising under this Agreement shall be instituted before any court, and all such disputes shall be submitted to final and binding arbitration in New Jersey, pursuant to the rules of the American Arbitration Association with one arbitrator." App. 15–16.

The state court granted Oxford's motion, thus referring the suit to arbitration.

The parties agreed that the arbitrator should decide whether their contract authorized class arbitration, and he determined that it did. Noting that the question turned on "construction of the parties' agreement," the arbitrator focused on the text of the arbitration clause quoted above. *Id.,* at 30. He reasoned that the clause sent to arbitration "the same universal class of disputes" that it barred the parties from bringing "as civil actions" in court: The "intent of the clause" was "to vest in the arbitration process everything that is prohibited from the court process." *Id.,* at 31. And a class action, the arbitrator continued, "is plainly one of the possible forms of civil action that could be brought in a court" absent the agreement. *Ibid.* Accordingly, he concluded that "on its face, the arbitration clause . . . expresses the parties' intent that class arbitration can be maintained." *Id.,* at 32.

Oxford filed a motion in federal court to vacate the arbitrator's decision on the ground that he had "exceeded [his] powers" under §10(a)(4) of the FAA. The District Court denied the motion, and the Court of Appeals for the Third Circuit affirmed. See 05–CV–2198, 2005 WL 6795061 (D NJ, Oct. 31, 2005), aff'd, 227 Fed. Appx. 135 (2007).

While the arbitration proceeded, this Court held in *Stolt-Nielsen* that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." 559 U. S., at 684. The parties in *Stolt-Nielsen* had stipulated that they had never reached an agreement on class arbitration. Relying on §10(a)(4), we vacated the arbitrators' decision approving class proceedings because, in the absence of such an agreement, the arbitrators had "simply . . . imposed [their] own view of sound policy." *Id.,* at 672.

Oxford immediately asked the arbitrator to reconsider his decision on class arbitration in light of *Stolt-Nielsen*. The arbitrator issued a new opinion holding that *Stolt-Nielsen* had no effect on the case because this agreement authorized class arbitration. Unlike in *Stolt-Nielsen*, the arbitrator explained, the parties here disputed the meaning of their contract; he had therefore been required "to construe the arbitration clause in the ordinary way to glean the parties' intent." App. 72. And in performing that task, the arbitrator continued, he had "found that the arbitration clause unambiguously evinced an intention to allow class arbitration." *Id.,* at 70. The arbitrator concluded by reconfirming his reasons for so construing the clause.

Oxford then returned to federal court, renewing its effort to vacate the arbitrator's decision under §10(a)(4). Once again, the District Court denied the motion, and the Third Circuit affirmed. The Court of Appeals first underscored the limited scope of judicial review that §10(a)(4) allows: So long as an arbitrator "makes a good faith attempt" to interpret a contract, "even serious errors of law or fact will not subject his award to vacatur." 675 F. 3d 215, 220 (2012). Oxford could not prevail under that standard, the court held, because the arbitrator had "endeavored to give effect to the parties' intent" and "articu-

late[d] a contractual basis for his decision." *Id.,* at 223–224. Oxford's objections to the ruling were "simply dressed-up arguments that the arbitrator interpreted its agreement erroneously." *Id.,* at 224.

We granted certiorari, 568 U. S. ___ (2012), to address a circuit split on whether §10(a)(4) allows a court to vacate an arbitral award in similar circumstances.[1] Holding that it does not, we affirm the Court of Appeals.

## II

Under the FAA, courts may vacate an arbitrator's decision "only in very unusual circumstances." *First Options of Chicago, Inc.* v. *Kaplan*, 514 U. S. 938, 942 (1995). That limited judicial review, we have explained, "maintain[s] arbitration's essential virtue of resolving disputes straightaway." *Hall Street Associates, L. L. C.* v. *Mattel, Inc.*, 552 U. S. 576, 588 (2008). If parties could take "full-bore legal and evidentiary appeals," arbitration would become "merely a prelude to a more cumbersome and time-consuming judicial review process." *Ibid.*

Here, Oxford invokes §10(a)(4) of the Act, which authorizes a federal court to set aside an arbitral award "where the arbitrator[] exceeded [his] powers." A party seeking relief under that provision bears a heavy burden. "It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error." *Stolt-Nielsen*, 559 U. S., at 671. Because the parties "bargained for the arbitrator's construction of their agreement," an arbitral decision "even arguably construing or applying the contract" must stand, regardless of a court's view of its (de)merits. *Eastern Associated Coal Corp.* v. *Mine Workers*, 531 U. S. 57, 62 (2000) (quoting *Steelworkers* v. *Enterprise Wheel & Car*

---

[1] Compare 675 F. 3d 215 (CA3 2012) (case below) (vacatur not proper), and *Jock* v. *Sterling Jewelers Inc.*, 646 F. 3d 113 (CA2 2011) (same), with *Reed* v. *Florida Metropolitan Univ., Inc.*, 681 F. 3d 630 (CA5 2012) (vacatur proper).

*Corp.*, 363 U. S. 593, 599 (1960); *Paperworkers* v. *Misco, Inc.*, 484 U. S. 29, 38 (1987); internal quotation marks omitted). Only if "the arbitrator act[s] outside the scope of his contractually delegated authority"—issuing an award that "simply reflect[s] [his] own notions of [economic] justice" rather than "draw[ing] its essence from the contract"—may a court overturn his determination. *Eastern Associated Coal*, 531 U. S., at 62 (quoting *Misco,* 484 U. S., at 38). So the sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong.[2]

And we have already all but answered that question just by summarizing the arbitrator's decisions, see *supra,* at 2–3; they are, through and through, interpretations of the parties' agreement. The arbitrator's first ruling recited the "question of construction" the parties had submitted to him: "whether [their] Agreement allows for class action arbitration." App. 29–30. To resolve that matter, the arbitrator focused on the arbitration clause's text, analyz-

---

[2] We would face a different issue if Oxford had argued below that the availability of class arbitration is a so-called "question of arbitrability." Those questions—which "include certain gateway matters, such as whether parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy"—are presumptively for courts to decide. *Green Tree Financial Corp.* v. *Bazzle*, 539 U. S. 444, 452 (2003) (plurality opinion). A court may therefore review an arbitrator's determination of such a matter *de novo* absent "clear[] and unmistakabl[e]" evidence that the parties wanted an arbitrator to resolve the dispute. *AT&T Technologies, Inc.* v. *Communications Workers*, 475 U. S. 643, 649 (1986). *Stolt-Nielsen* made clear that this Court has not yet decided whether the availability of class arbitration is a question of arbitrability. See 559 U. S., at 680. But this case gives us no opportunity to do so because Oxford agreed that the arbitrator should determine whether its contract with Sutter authorized class procedures. See Brief for Petitioner 38, n. 9 (conceding this point). Indeed, Oxford submitted that issue to the arbitrator not once, but twice—and the second time after *Stolt-Nielsen* flagged that it might be a question of arbitrability.

ing (whether correctly or not makes no difference) the scope of both what it barred from court and what it sent to arbitration. The arbitrator concluded, based on that textual exegesis, that the clause "on its face . . . expresses the parties' intent that class action arbitration can be maintained." *Id.,* at 32. When Oxford requested reconsideration in light of *Stolt-Nielsen*, the arbitrator explained that his prior decision was "concerned solely with the parties' intent as evidenced by the words of the arbitration clause itself." App. 69. He then ran through his textual analysis again, and reiterated his conclusion: "[T]he text of the clause itself authorizes" class arbitration. *Id.,* at 73. Twice, then, the arbitrator did what the parties had asked: He considered their contract and decided whether it reflected an agreement to permit class proceedings. That suffices to show that the arbitrator did not "exceed[ ] [his] powers." §10(a)(4).

Oxford's contrary view relies principally on *Stolt-Nielsen*. As noted earlier, we found there that an arbitration panel exceeded its powers under §10(a)(4) when it ordered a party to submit to class arbitration. See *supra,* at 3. Oxford takes that decision to mean that "even the 'high hurdle' of Section 10(a)(4) review is overcome when an arbitrator imposes class arbitration without a sufficient contractual basis." Reply Brief 5 (quoting *Stolt-Nielsen*, 559 U. S., at 671). Under *Stolt-Nielson*, Oxford asserts, a court may thus vacate "as *ultra vires*" an arbitral decision like this one for misconstruing a contract to approve class proceedings. Reply Brief 7.

But Oxford misreads *Stolt-Nielsen*: We overturned the arbitral decision there because it lacked *any* contractual basis for ordering class procedures, not because it lacked, in Oxford's terminology, a "sufficient" one. The parties in *Stolt-Nielsen* had entered into an unusual stipulation that they had never reached an agreement on class arbitration. See 559 U. S., at 668–669, 673. In that circumstance, we

noted, the panel's decision was not—indeed, could not have been—"based on a determination regarding the parties' intent." *Id.,* at 673, n. 4; see *id.,* at 676 ("Th[e] stipulation left no room for an inquiry regarding the parties' intent"). Nor, we continued, did the panel attempt to ascertain whether federal or state law established a "default rule" to take effect absent an agreement. *Id.,* at 673. Instead, "the panel simply imposed its own conception of sound policy" when it ordered class proceedings. *Id.,* at 675. But "the task of an arbitrator," we stated, "is to interpret and enforce a contract, not to make public policy." *Id.,* at 672. In "impos[ing] its own policy choice," the panel "thus exceeded its powers." *Id.,* at 677.

The contrast with this case is stark. In *Stolt-Nielsen*, the arbitrators did not construe the parties' contract, and did not identify any agreement authorizing class proceedings. So in setting aside the arbitrators' decision, we found not that they had misinterpreted the contract, but that they had abandoned their interpretive role. Here, the arbitrator did construe the contract (focusing, per usual, on its language), and did find an agreement to permit class arbitration. So to overturn his decision, we would have to rely on a finding that he misapprehended the parties' intent. But §10(a)(4) bars that course: It permits courts to vacate an arbitral decision only when the arbitrator strayed from his delegated task of interpreting a contract, not when he performed that task poorly. *Stolt-Nielsen* and this case thus fall on opposite sides of the line that §10(a)(4) draws to delimit judicial review of arbitral decisions.

The remainder of Oxford's argument addresses merely the merits: The arbitrator, Oxford contends at length, badly misunderstood the contract's arbitration clause. See Brief for Petitioner 21–28. The key text, again, goes as follows: "No civil action concerning any dispute arising under this Agreement shall be instituted before any court,

and all such disputes shall be submitted to final and bind-
ing arbitration." App. 15–16. The arbitrator thought that
clause sent to arbitration all "civil action[s]" barred from
court, and viewed class actions as falling within that
category. See *supra,* at 2. But Oxford points out that the
provision submits to arbitration not any "civil action[s],"
but instead any "dispute arising under" the agreement.
And in any event, Oxford claims, a class action is not a
form of "civil action," as the arbitrator thought, but merely
a procedural device that may be available in a court. At
bottom, Oxford maintains, this is a garden-variety arbi-
tration clause, lacking any of the terms or features that
would indicate an agreement to use class procedures.

We reject this argument because, and only because, it is
not properly addressed to a court. Nothing we say in this
opinion should be taken to reflect any agreement with the
arbitrator's contract interpretation, or any quarrel with
Oxford's contrary reading. All we say is that convincing a
court of an arbitrator's error—even his grave error—is not
enough. So long as the arbitrator was "arguably constru-
ing" the contract—which this one was—a court may not
correct his mistakes under §10(a)(4). *Eastern Associated
Coal*, 531 U. S., at 62 (internal quotation marks omitted).
The potential for those mistakes is the price of agreeing
to arbitration. As we have held before, we hold again: "It
is the arbitrator's construction [of the contract] which was
bargained for; and so far as the arbitrator's decision con-
cerns construction of the contract, the courts have no
business overruling him because their interpretation of
the contract is different from his." *Enterprise Wheel*, 363
U. S. at 599. The arbitrator's construction holds, however
good, bad, or ugly.

In sum, Oxford chose arbitration, and it must now live
with that choice. Oxford agreed with Sutter that an arbi-
trator should determine what their contract meant, in-
cluding whether its terms approved class arbitration. The

arbitrator did what the parties requested: He provided an interpretation of the contract resolving that disputed issue. His interpretation went against Oxford, maybe mistakenly so. But still, Oxford does not get to rerun the matter in a court. Under §10(a)(4), the question for a judge is not whether the arbitrator construed the parties' contract correctly, but whether he construed it at all. Because he did, and therefore did not "exceed his powers," we cannot give Oxford the relief it wants. We accordingly affirm the judgment of the Court of Appeals.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 12–135

OXFORD HEALTH PLANS LLC, PETITIONER *v.*
JOHN IVAN SUTTER

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

[June 10, 2013]

JUSTICE ALITO, with whom JUSTICE THOMAS joins,
concurring.

As the Court explains, "[c]lass arbitration is a matter of
consent," *ante,* at 1, and petitioner consented to the arbi-
trator's authority by conceding that he should decide in
the first instance whether the contract authorizes class
arbitration. The Court accordingly refuses to set aside the
arbitrator's ruling because he was "'arguably construing
. . . the contract'" when he allowed respondent to proceed
on a classwide basis. *Ante,* at 8 (quoting *Eastern Associated
Coal Corp.* v. *Mine Workers,* 531 U. S. 57, 62 (2000)).
Today's result follows directly from petitioner's concession
and the narrow judicial review that federal law allows in
arbitration cases. See 9 U. S. C. §10(a).

But unlike petitioner, absent members of the plaintiff
class never conceded that the contract authorizes the ar-
bitrator to decide whether to conduct class arbitration.
It doesn't. If we were reviewing the arbitrator's interpre-
tation of the contract *de novo*, we would have little trouble
concluding that he improperly inferred "[a]n implicit
agreement to authorize class-action arbitration . . . from
the fact of the parties' agreement to arbitrate." *Stolt-
Nielsen S. A.* v. *AnimalFeeds Int'l Corp.,* 559 U. S. 662,
685 (2010).

With no reason to think that the absent class members

ever agreed to class arbitration, it is far from clear that they will be bound by the arbitrator's ultimate resolution of this dispute. Arbitration "is a matter of consent, not coercion," *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior Univ.*, 489 U. S. 468, 479 (1989), and the absent members of the plaintiff class have not submitted themselves to this arbitrator's authority in any way. It is true that they signed contracts with arbitration clauses materially identical to those signed by the plaintiff who brought this suit. But an arbitrator's erroneous interpretation of contracts that do not authorize class arbitration cannot bind someone who has not authorized the arbitrator to make that determination. As the Court explains, "[a]n arbitrator may employ class procedures only if the parties have authorized them." *Ante,* at 1.

The distribution of opt-out notices does not cure this fundamental flaw in the class arbitration proceeding in this case. "[A]rbitration is simply a matter of contract between the parties," *First Options of Chicago, Inc.* v. *Kaplan*, 514 U. S. 938, 943 (1995), and an offeree's silence does not normally modify the terms of a contract, 1 Restatement (Second) of Contracts §69(1) (1979). Accordingly, at least where absent class members have not been required to opt *in*, it is difficult to see how an arbitrator's decision to conduct class proceedings could bind absent class members who have not authorized the arbitrator to decide on a classwide basis which arbitration procedures are to be used.

Class arbitrations that are vulnerable to collateral attack allow absent class members to unfairly claim the "benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one," *American Pipe & Constr. Co.* v. *Utah*, 414 U. S. 538, 546–547 (1974). In the absence of concessions like Oxford's, this possibility should give courts pause before concluding

that the availability of class arbitration is a question the arbitrator should decide.  But because that argument was not available to petitioner in light of its concession below, I join the opinion of the Court.