WOOD, Chief Judge,
with whom WILLIAMS and HAMILTON, Circuit Judges, join,
dissenting from the denial of rehearing en Banc.
The majority has chosen to create a conflict with the Third Circuit in this case over the proper interpretation of section 302 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 186. The question, briefly, involves when an employer is entitled to pay money or any other thing of value to a union representative who is a present or former employee. See section 302(c)(1), 29 U.S.C. § 186(c)(1). The importance of the question is attested by the Supreme Court’s grant of certiorari in Caterpillar, Inc. v. Int’l Union, United Auto., Aerospace & Agric. Implement Workers of Am., et al., 521 U.S. 1152, 118 S.Ct. 31, 138 L.Ed.2d 1060 (1997). Although that case was settled before the Court issued an opinion, that happenstance says nothing about the significance of the issue. Moreover, for the reasons I sketch out here, I believe that the majority has adopted a position that is inconsistent with the LMRA and that disregards the proper standard of review for arbitral awards. I would set this case for argument before the en Banc court, because I believe that there are powerful reasons to affirm the district court.
I begin with the fact that this court is being asked to overturn an arbitral award. Despite the fact that arbitral awards must be upheld even if a court disagrees with *730 the outcome, Oxford Health Plans LLC v. Sutter, — U.S. —, 133 S.Ct. 2064, 2068, 186 L.Ed.2d 113 (2013), and even if a court thinks that a mistake of law has been made, Stolt-Nielsen S.A. v. AnimalFeeds Int’l Corp., 559 U.S. 662, 671, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010), the panel here has engaged in de novo review of the arbitrator’s conclusion that Titan made payments to the president and benefit representative of the Union “by reason of their former employment” with Titan. That finding of the arbitrator is a classic application of the law to facts. The question before this court is therefore not whether we would have made the same finding; it is whether the parties agreed to commit that issue to arbitration, and whether the arbitrator’s decision is tied to the collective bargaining agreement.
The panel has tried to shoehorn its decision into the narrow space created by the doctrine that arbitrators are not authorized to order parties to take an illegal act, recognized in EEOC v. Ind. Bell Tel. Co., 256 F.3d 516, 524 (7th Cir.2001) (en banc), and based on the Supreme Court’s cases explaining that a reviewing court should not enforce an arbitration award that is contrary to “well defined and dominant” public policy. W.R. Grace & Co. v. Local Union 759, Int’l Union of United Rubber, 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). But I am not persuaded that this case can be forced into that exception. I am especially struck by the breadth of the panel’s phrasing of the question presented, as it appears on page 3 of the opinion: “This appeal presents an issue of first impression in this circuit, namely whether a company may legally pay the full-time salaries of the President and Benefit Representative of the union representing the company’s employees.” Op. at 711. The Third Circuit’s decision in Caterpillar, Inc. v. Int’l Union, United Auto., Aerospace & Agric. Implement Workers of Am., 107 F.3d 1052 (3d Cir.1997), held that the answer to this question is yes. The panel, with the acquiescence of a majority of the active judges, has decided to follow the views of one of the dissenting judges in that case. This is a mistake, in my view.
In order to explain why that step is unwarranted and why the Third Circuit’s majority had the better of the argument, I begin with the language of section 302 of the LMRA, 29 U.S.C. § 186. Section 302(a) opens with a broad prohibition:
It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the'interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—
(1) to any representative of any of his employees who are employed in an industry affecting commerce; ...
Subsection (c) of the statute then sets out a long list of exceptions to that general prohibition. The exception that is applicable here is found in section 302(c)(1) (emphasis added):
The provisions of this section shall not be applicable (1) in respect to any money or other thing of value payable by an employer to any of his employees whose established duties include acting openly for such employer in matters of labor relations or personnel administration or to any representative of his employees, or to any officer or employee of a labor organization, who is also an employee or former employee of such employer, as compensation for, or by reason of, his service as an employee of such employer; ...
The arbitrator in the present case found as a fact that Union President Steve Van- *731 derheyden and Union Benefit Representative Kevin Kirk were former full-time employees of Titan, that they were receiving money from Titan in the amount of their full salaries (as specified in the CBA), and that they were receiving those salaries by reason of their service as former employees of Titan. They were also receiving an array of fringe benefits, including health care and pension contributions. Oddly, the majority either does not seem to think that those fringe benefits were a “thing of value,” or perhaps it thinks that former employees who do not become union representatives nonetheless retain sick leave and comparable fringe benefits (though I do not know why this would be so). Alternatively, the majority tries to characterize benefits as something different “in degree” from salary, but nothing in the statutory language shaves things so finely. One way or the other, the majority appears willing to allow the employer to cover those costs. See, e.g., op. at 721-22. It seems to me that if these benefits are permissible under sections 302(a) and (c), then salary is too. It would come as news to most people that fringe benefits like health care are not a “thing of value.”
I recognize the concern that there is an embedded conflict of interest when an employer pays the salary of a union representative- — or indeed, as section 302(a) says, when an employer gives a union member any “thing of value.” But Congress was well aware of this conflict and resolved it expressly through the combination of the general prohibition of section 302(a) and the exceptions of 302(c). It is not up to us to decide whether Congress struck the right balance; we have only to apply the law as it is written.
Because it is undisputed that Vander-heyden and Kirk are both former employees of Titan, the question boils down to this: was Titan paying their salaries “by reason of’ their service as former employees? The majority first endorses the position taken in Judge Mansmann’s dissent in the Third Circuit’s decision in Caterpillar, in which she argued that the “by reason of’ exception simply does not apply to salaries. Instead,, she suggested, that exception does no more than “recognize[] that current and former employees might have a right to receive payments from their employers that arise from their services for their employers but that are not properly classified as ‘compensation.’ ” Op. at 720. The only, but fatal, problem with that position is that neither section 302(a) nor section 302(c)(1) contains any such limitation. To the contrary, both sections use the broadest possible language; they speak identically of “any money or other thing of value.” If Congress had wanted to draw the' line Judge Mansmann proposed, it easily could have done so. But it did not.
Judge Mansmann’s conclusion that the employer’s decision in Caterpillar to cover the union representatives’ salaries must have been unrelated to (that is, not “by reason of’) their former work for the employer is doubly flawed. Not only does that position rest on a limitation that the statute does not recognize; it also fails to recognize that the coverage of the salaries of certain union members can be explained only by the' former relationship with the employer. When a collective bargaining agreement is in place, that agreement helps to keep labor peace, through mechanisms such as a smoothly functioning seniority system, well understood responsibilities in each job, and, most importantly, a grievance procedure. Union representatives play a critical role in the smooth functioning of the workplace. Although it is possible that having a union representative who knows nothing about the particular employer, the particular workplace, and applicable industry norms might work, *732 it is normally preferable to have a union representative with a thorough understanding of the employer’s business — in other words, to use a former (and potentially future) employee. That is undoubtedly why Congress chose to include this exception in section 302(c)(1). Not a word in the statute indicates that this exception is available only to part-time union representatives.
Then-Judge Alito’s dissent similarly inserts language into the statute that is not there. He divined that the phrase “by reason of’ must imply that the identified characteristic (here, former employee status) can only be a major cause, not just a motivating factor. As support, he notes that the Green Bay Packers could not have won Super Bowl XXXI without defeating the San Francisco 49ers in the first round of the playoffs, but that it would be odd to say that the Packers won the Super Bowl “by reason of’ defeating the 49ers. 107 F.3d at 1069. At one level, however, his example simply illustrates one of thousands of possible instances of the post hoc, ergo propter hoc fallacy; at another level, what is really worrying him is not the causal chain, which certainly exists, but remoteness: one necessary (but not sufficient) step along the way to the Packers’ Super Bowl victory was to eliminate the 49ers. Neither the logical fallacy nor the causation problem exists here. The arbitrator found that Titan was. paying Van-derheyden and Kirk precisely because they were the two former employees with responsibility to make the collective bargaining agreement work. There is a clear line of logic, motivation, and causation. At a minimum, the point is not so unclear that the arbitrator’s factual finding should be overturned.
I would set this case for en banc consideration for two reasons. First, and most importantly, I believe that the majority has taken an action that is inconsistent with a long line of Supreme Court decisions instructing courts to accept the results of consensual arbitration, even if we think those results are mistaken or ill-advised. See Oxford Health Plans LLC v. Sutter, — U.S. —, 133 S.Ct. 2064, 2068, 186 L.Ed.2d 113 (2013); Stolt-Nielsen S.A. v. AnimalFeeds Int’l Corp., 559 U.S. 662, 671, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010); E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17, 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000); United Paperworkers Int’l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (“[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.”). Second, looking particularly to labor law, I see nothing in this arbi-tral result that is either inconsistent with section 302 of the LMRA or that commands the parties to take an illegal action. To the contrary, the majority has upset the balance that Congress wrote into the statute, by engrafting its own limitations onto the existing structure. The case is thus important both for what it does to arbitration, and for what it does to labor law. I respectfully dissent.