NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3951
_____

THE WASHINGTON HOSPITAL,
                                                    Appellant


v.

SEIU HEALTHCARE INC. PENNSYLVANIA

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-13-cv-01607)

District Judge:  Honorable Maurice B. Cohill, Jr.
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 19, 2015

Before:  FUENTES, GREENAWAY, JR., SLOVITER, *Circuit Judges*.

(Opinion filed: June 12, 2015)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SLOVITER, *Circuit Judge*.

Appellant the Washington Hospital ("the Hospital") seeks to vacate an arbitration award pursuant to 29 U.S.C. § 185 of the Labor Management Relations Act and 9 U.S.C. § 10 of the Federal Arbitration Act.  Because the arbitrator's decision "arguably constru[es]" the parties' collective bargaining agreement ("CBA"), *see Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013), we will affirm.[1]

I.

A.

We write primarily for the parties, and assume their familiarity with the text of the CBA and the arbitration proceedings.  Briefly, the Hospital and Appellee SEIU Healthcare Inc. Pennsylvania ("the Union"), a labor organization that represents the Hospital's service and maintenance employees, are parties to the CBA.  The CBA contains a grievance procedure for the settlement of disputes, which culminates in binding arbitration.  Pursuant to the CBA, employees represented by the Union can be discharged and disciplined only for "just cause."  App. at 273.  The CBA also contains a no-fault Absenteeism Policy, which provides in pertinent part:

> II. Definitions
> . . .
> . . . An occurrence is defined as one or more consecutive days in which an employee is absent from his or her scheduled work, inclusive of scheduled days off.  The first day that an employee calls off work counts as one (1) occurrence.  Any additional consecutive call offs will be assessed as a .5 occurrence up to a total of 1.5. . . .
> . . .

---

[1] The District Court had subject matter jurisdiction pursuant to 29 U.S.C. § 185 and 9 U.S.C. § 10.  This court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

III. Progressive Discipline for Occurrences

Discipline under this system will begin if during any twelve (12) consecutive month period worked an employee has six (6) occurrences. . . . As has been the Hospital's practice with all discipline, once an employee is disciplined he/she will continue to progress through the discipline steps unless he/she has had twelve (12) consecutive months worked without an occurrence that requires discipline. Once an employee reaches a final written warning, any additional occurrence shall result in termination.

The date of any occurrence that results in discipline will be considered the disciplinary action date regardless of the date the discipline is actually administered.

 A. <u>Oral Warning</u> – Six (6) but less than Eight (8) Occurrences.
 B. <u>Written Warning</u> – Eight (8) but less than Nine (9) Occurrences.
 C. <u>Final Written Warning</u> – Nine (9) but less than Ten (10) Occurrences. Note, any further occurrences, once an employee is at the final written stage, shall result in suspension pending discharge and/or termination.
 D. <u>Termination</u> – Ten (10) or more Occurrences.

*Id.* at 301-03.

Deborah Holden ("Holden") was employed by the Hospital from April 1980 until her discharge on February 28, 2013. Holden began accumulating occurrences under the Absenteeism Policy in November of 2011. Between November 2011 and July 17, 2012, she accumulated a total of seven occurrences and received an Oral Warning on July 31, 2012 that was effective July 17, 2012. On March 1, 2013, Holden received a Written Warning effective February 22, 2013 for having reached 8.5 occurrences following her absences on February 21, 2013 and February 22, 2013. Also on March 1, 2013, Holden received a notice of termination effective February 28, 2013 for absences occurring on February 26, 2013 and February 28, 2013, which brought her total number of occurrences

3

to ten.[2]  Holden was familiar with the Absenteeism Policy but was not aware that she had reached ten occurrences because she had not added them up.  At the time of these final two absences, she had a few vacation days remaining.  The Union filed a grievance on March 7, 2013 protesting Holden's termination, and the matter proceeded to arbitration.

On June 28, 2013, the arbitrator held an evidentiary hearing, during which the parties submitted evidence, examined witnesses, and presented argument.  On October 9, 2013, the arbitrator issued a decision concluding that the termination was improper.  He acknowledged that Holden had accumulated ten occurrences in a twelve-month period and was thus subject to termination.  However, he found that "all of the steps of the contractually agreed upon Progressive Discipline procedures were not followed."  *Id.* at 361.  Prior to the February 26, 2013 occurrence, Holden had accumulated 8.5 occurrences, which warranted a Written Warning under the Policy, but "that Written Warning was not issued until March 1, 2013 which was *after* her termination."  *Id.*  On February 26, 2013, Holden reached nine but less than ten occurrences, and, at that point, "the Policy required that she receive a Final Written Warning."  *Id.*  Instead, the Hospital skipped over this step and issued a Termination Notice on March 1, 2013 because of her tenth occurrence on February 28, 2013.

The arbitrator recognized that the CBA makes "the effective date of the discipline the same as the date of the last occurrence, regardless of when the discipline was issued."  *Id.* at 362.  However, he found this irrelevant because he reasoned, "[w]hen dealing with

---

[2] Holden was not scheduled to work on February 27, 2013, so these were consecutive absences.

a no-fault attendance policy it is obviously very important for an employee to be accurately and promptly advised as to which stage of the disciplinary progression they are at in order to be better able avoid, if possible, additional absenteeism infractions and greater penalties." *Id.* Noting Holden's familiarity with the Policy and her thirty-three-year employment with the Hospital, the arbitrator reasoned that, had Holden been issued a Written Warning or a Final Written Warning prior to her termination, she may have utilized her remaining vacation time to avoid termination. Finally, as to the Hospital's argument that its established practice was not to follow all of the progressive disciplinary steps, the arbitrator stated that this was "unpersuasive" because the purpose of these steps was to warn the employee and provide a chance for corrective action—a chance which Holden was denied. *Id.* at 363.

The arbitrator concluded that Holden's termination was improper and that she was entitled to reinstatement. However, because Holden, in failing to seek other employment, did not attempt to mitigate her losses, she was not entitled to back pay.[3] On October 28, 2013, the Hospital filed a motion with the arbitrator to open the record and/or for reconsideration. The arbitrator denied the motion on November 5, 2013.

B.

On November 7, 2013, the Hospital filed a complaint and a motion to vacate the arbitration award with the District Court. The Hospital asserted that the arbitrator's award "exceeds his powers, is unreasonable, is irrational, does not draw its essence from

---

[3] On October 23, 2013, the arbitrator filed a Corrected Award, which did not alter the award in any way that is material to this appeal.

5

the parties' CBA and is unsupported by the record, the established past practice of the parties, or applicable case law and statute." *Id.* at 21. The Union answered and counterclaimed to enforce the award on January 5, 2014.

On March 6, 2014, the parties filed a report pursuant to Federal Rule of Civil Procedure 26(f) ("Rule 26(f) Report"), which reflected their agreement "that there is no need for fact discovery based on the issues presented." *Id.* at 390. On March 20, 2014, the Hospital filed a motion for leave to amend the Rule 26(f) Report to include time for discovery and for amendment of the complaint. The basis of the motion was the Hospital's finding, after the filing of the Rule 26(f) Report, that Holden had applied for Social Security Disability benefits during the arbitration, "was declared disabled by the Social Security Administration as of March 1, 2013[,] and was awarded disability benefits as of August 2013." *Id.* at 397. The Hospital requested discovery "to determine if Ms. Holden committed fraud through her testimony at the Arbitration Hearing and, as such, her testimony should be disregarded" and her grievance rendered moot. *Id.* Holden's June 28, 2013 testimony elicited on cross-examination by the Hospital, which the Hospital now claims was fraudulent, is as follows:

> Q: Now, are you presently working?
> A: No, I'm not.
> Q: Is there a reason you're not working at the present time?
> A: I am currently collecting unemployment and I am looking for other employment. I just have not found the right job.
> Q: You're not representing that you're incapable of working?
> A. No, I am not.
> . . .
> Q: Have you made applications to any health care facilities for work?
> A: No, I have not. I have been going on the job search for LPN position, because I have a license. I have looked at them, and currently I can't go per

6

se to an interview, because my vehicle is down, has been down since I have been terminated. . . .

*Id.* at 204-05.

The Union opposed the motion to amend the Rule 26(f) Report, and on August 20, 2014, the District Court denied the Hospital's motion to vacate the arbitration award and its motion to amend the Rule 26(f) Report. As to Holden's testimony and her claim for disability benefits, the Court stated, "Ms. Holden was not asked any questions about a social security disability claim, nor did she volunteer any information along these lines. Thus, she cannot be said to have lied in her testimony." *Id.* at 6. Moreover, the Court did not believe the "issue [was] relevant to the Arbitrator's decision which was based on his assigned task to interpret the CBA terms." *Id.* As to the issue of whether the Arbitrator failed to draw the decision from the CBA, the Court determined that the decision came not only from the essence of the contract but "from the literal words of the contract itself." *Id.* at 7-8. The Hospital filed a timely notice of appeal.

II.

A.

We exercise plenary review over the District Court's decision on a motion to vacate an arbitration award. *Akers Nat'l Roll Co. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 712 F.3d 155, 160 (3d Cir. 2013). We apply the same narrow review the District Court should have applied. *Id.* "If an 'arbitrator's award draws its essence from the collective bargaining agreement, and is not merely his own brand of industrial justice, the award is legitimate.'" *Id.* (quoting

*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987)). We review the District Court's ruling on the motion to amend the Rule 26(f) Report to permit discovery for abuse of discretion. *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987).

B.

The Hospital argues that the District Court abused its discretion by denying the Hospital's request for discovery and by dismissing the action. According to the Hospital, to be deemed totally disabled by the Social Security Administration ("SSA"), a person must show that he or she "cannot do the work [he or she] did before; a medical condition prevents the individual from adjusting to other work; and the disability is expected to last at least one year or result in death." Appellant's Br. at 19. But at the evidentiary hearing, Holden testified that she was capable of working, which "contradicts her representation to the SSA" that she was "permanently disabled and unable to work." *Id.* Holden's testimony at the arbitration hearing was—in the Hospital's view—fraudulent; thus, the Hospital argues that the award was procured by fraud and is subject to vacatur pursuant to 9 U.S.C. § 10(a)(1).[4] Moreover, because Holden was retroactively deemed disabled as of the date of her termination, the Hospital argues that "the Union lacked [Article III] standing to bring a claim on behalf of her for reinstatement under the CBA." *Id.* at 21-23. We disagree.

---

[4] This was not the basis for which the Hospital sought vacatur in its complaint, but the Hospital anticipated amending its complaint following discovery.

8

We conclude that Holden's testimony was not fraudulent, and that even if it was, it was immaterial to the purpose of the arbitration, which was to obtain an interpretation of the CBA. At the time of her testimony, Holden had not been declared disabled; in fact she was collecting unemployment benefits. Any inconsistency between Holden's seeking disability benefits while elsewhere stating that she was able to work is an issue for consideration by the SSA and the State of Pennsylvania in determining which type of government benefits she can collect. In reviewing an arbitration award, we will not penalize Holden who, upon finding herself unemployed, sought alternative types of government benefits, the requirements for the receipt of which are conflicting. And notably, Holden was not directly asked if she had applied for disability benefits.

Moreover, Holden's testimony was irrelevant to the arbitrator's determination that the Hospital breached the CBA. The Hospital has pointed to no authority or language from the CBA suggesting that Holden must be eligible for reinstatement in order to proceed with arbitration. The arbitration is governed by the text of the CBA, which defines grievance as "any question or controversy between the Hospital and one or more employees of the Union, as to the interpretations, or application of, or compliance with the terms of this Agreement only." App. at 264. Under this definition, the parties had a live grievance at the time of the arbitration hearing and decision in that they disagreed over the interpretation of the Absenteeism Policy as it was applied to Holden. Whether

9

there would be a remedy for Holden does not negate the Union's interest in obtaining the arbitrator's interpretation for the benefit of all the employees that the Union represents.[5]

For these reasons, the District Court did not abuse its discretion by its denial of the discovery request or its determination that Holden's testimony was not fraudulent or, alternatively, was irrelevant to the issues decided by the arbitrator.

C.

The Hospital also seeks to vacate the arbitrator's decision and award pursuant to 9 U.S.C. § 10(a)(4) of the Federal Arbitration Act, which provides that a district court may vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." The Hospital's burden to demonstrate this error is "heavy." *Oxford Health Plans LLC*, 133 S. Ct. at 2068. The question for our review is "whether the arbitrator (even arguably) interpreted the [CBA], not whether he got its meaning right or wrong." *Id.*

We conclude that the arbitrator's decision and award "arguably construes" the CBA and that the arbitrator did not exceed his authority. The arbitrator discussed the no-fault Absenteeism Policy at length, including its operation and purpose. He referenced the Policy's detailed disciplinary steps and explained how the Hospital failed to follow the final two warning steps before termination. The arbitrator acknowledged the

---

[5] While the arbitrator's interpretation of the CBA and finding of a breach are not undermined by Holden's alleged fraud, the receipt of SSA disability benefits may have implications on future enforcement of the arbitrator's award.

Hospital's argument that the CBA makes the discipline's effective date the same day of the last occurrence, but he found that this did not negate the need for timely, meaningful warnings to achieve the Absenteeism Policy's goal of providing the employee with opportunity "to avoid, if possible, additional absenteeism infractions and greater penalties." App. at 361-62. Furthermore, the Policy references "progress[ing] through the discipline steps" and states that "[t]he Disciplinary Action sends a message to the employee that immediate improvement in attendance is required." *Id.* at 302. Thus, the arbitrator's interpretation is consistent with the text of the CBA. It cannot be seriously disputed that the arbitrator was "arguably construing" the CBA, and thus, we will uphold the arbitration decision.

III.

For these reasons, we will affirm the District Court.