**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 16-2107

NORFOLK SOUTHERN RAILWAY COMPANY,

Plaintiff - Appellee,

v.

SPRINT COMMUNICATIONS COMPANY L.P.,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Arenda L. Wright Allen, District Judge.  (2:15-cv-00016-AWA-RJK)

Argued:  December 7, 2017                     Decided:  February 22, 2018

Before MOTZ, DUNCAN, and THACKER, Circuit Judges.

Reversed and remanded by published opinion.  Judge Motz wrote the opinion, in which Judge Duncan and Judge Thacker joined.

**ARGUED:** J. Emmett Logan, STINSON LEONARD STREET, LLP, Kansas City, Missouri, for Appellant.  Gary Alvin Bryant, WILLCOX & SAVAGE, PC, Norfolk, Virginia, for Appellee. **ON BRIEF:** Christy M. Milliken, STINSON LEONARD STREET, LLP, Washington, D.C., for Appellant.

DIANA GRIBBON MOTZ, Circuit Judge:

Sprint Communications Company L.P. appeals the district court's order granting Norfolk Southern Railway Company's motion to confirm an arbitration award. Because the award is not "mutual, final, and definite" as required by the Federal Arbitration Act ("FAA"), we reverse and remand the case to the district court for further proceedings consistent with this opinion.

I.

On July 1, 1987, the predecessors of Sprint and Norfolk Southern entered into a License Agreement. Under the Agreement, Norfolk Southern granted Sprint the right to use certain of Norfolk Southern's railroad rights of way for Sprint's fiber optic telecommunications system for an initial term of 25 years. The License Agreement expired on June 30, 2012, but Sprint exercised its right to renew it for an additional 25-year period. This appeal stems from the parties' disagreement over the amount Sprint must pay Norfolk Southern to continue to use the railroad rights of way during the new 25-year term.

Section 2.2.2 of the Agreement outlines the agreed procedure for establishing this payment amount. It provides that, if the parties disagree on the amount, Sprint will select an appraiser to submit an estimate of the amount due. If Norfolk Southern rejects that estimate, it will hire its own appraiser, who will in turn submit his or her estimate. Section 2.2.2 further provides that if the two appraisers cannot agree on the amount due, they will select a third appraiser to broker a compromise.

2

When the parties' respective appraisers disagreed as to the amount due, they followed these procedures and appointed Charles Argianas as the third appraiser. Argianas, unclear as to how he should proceed in his role as the third appraiser, asked the parties for guidance. The joint response from Sprint and Norfolk Southern instructed Argianas to seek a compromise with one (or both) of the other appraisers. Only if he was unable to do so should he perform his own appraisal.[1]

On December 11, 2014, after consulting with the parties' appraisers, Argianas emailed the parties a document titled "Majority Decision for Settlement Purposes Subject to Extraordinary Appraisal Assumptions." This Majority Decision sets forth the compromise Argianas had reached with Norfolk Southern's appraiser. The Majority

---

[1] The email from the parties to Argianas stated, in relevant part:

> Under the License Agreement, there are two aspects to the work of the third appraiser. The first entails efforts to come to an agreement with [Norfolk Southern's appraiser] or [Sprint's appraiser] or both as to the fair market value of the License. Those efforts do not necessarily entail identification of inconsistencies, weaknesses, or errors in the appraisers' logic, disqualification of an appraiser's report, or field work or research by the third appraiser. The License Agreement also does not require you to act as a "review appraiser" or to perform an "appraisal review" — as those terms are defined in the Uniform Standards of Professional Appraisal Practice. Nor does the License Agreement preclude any of those steps. Rather, it leaves to you the determination of how the process should be structured. The base fee is intended to cover the services you provide in those resolution efforts.
>
> The second aspect of the work entails an independent appraisal. You would perform the appraisal only if you cannot agree with one or both of the other appraisers on the fair market value of the License . . . .

3

Decision lists a dollar amount ($6,100,000) and refers to Article 2.2.2 of the Agreement. It explains that Argianas and Norfolk Southern's appraiser had assented to this Majority Decision but that Argianas "reserve[d] his assent without prejudice or time limitation subject to the following extraordinary appraisal assumptions: 1) Norfolk Southern in fact has marketable title of the occupancy corridor; and 2) [Norfolk Southern's appraiser's] ATF value is reasonable, which it appears to be."[2] The Majority Decision further states that "[i]f either of these extraordinary assumptions are found to not be true, Argianas . . . reserves the right to withdraw his assent." Norfolk Southern accepted the payment amount contained in the Majority Decision and promptly billed Sprint for that amount. Sprint found the amount unacceptable and refused to pay.

Rather than resolving the matter, the Majority Decision led to further disputes that played out in parallel tracks.

Sprint filed a Demand for Arbitration with the American Arbitration Association ("AAA") pursuant to Section 20.5 of the Agreement, which provides that certain disputes related to the Agreement will be settled through AAA arbitration. In its demand for AAA arbitration, Sprint claimed Norfolk Southern had "unilaterally terminated" the Section 2.2.2 process before that process had run its course such that no final determination had been issued as to the amount Sprint owed. Sprint asked the AAA panel to determine the amount Sprint owed — even though the parties had already spent significant time and

---

[2] ATF refers to "across-the-fence," which is the type of methodology used by Norfolk Southern's appraiser in his calculations.

4

effort attempting to resolve that same question pursuant to the procedures outlined in Section 2.2.2.

Meanwhile, Norfolk Southern brought this action against Sprint in the federal district court, seeking enforcement of the Majority Decision as a final and binding arbitration award. Because Section 2.2.2 of the Agreement provided the procedures for establishing the payment amount, Norfolk Southern maintained that the arbitration provision contained in Section 20.5 did not apply. Accordingly, Norfolk Southern asked the district court to enter a judgment against Sprint for breach of contract, declare the Majority Decision final and binding, and stay the AAA arbitration.[3]

Thus, at this stage, the dispute between the parties had three essential components. First, the parties disputed whether the Majority Decision constituted a final and binding arbitration award and whether Sprint had breached its contractual obligations by refusing to pay the amount established by the Majority Decision. Second, they disagreed as to the appropriate forum for resolving this dispute. Sprint argued that, pursuant to Section 20.5 of the License Agreement, disputes related to the Majority Decision must be settled through AAA arbitration; Norfolk Southern maintained that Section 20.5 did not apply to claims raised by Sprint and that the parties should proceed in district court. Finally, the

---

[3] On August 21, 2015, the district court stayed the litigation initiated by Norfolk Southern so that the AAA arbitration demanded by Sprint could proceed. In October 2015, Norfolk Southern sought leave to amend its complaint to claim explicitly that the Majority Decision constituted an arbitration award rendered pursuant to a valid and enforceable arbitration provision. The amended complaint also asks the district court to confirm the Majority Decision under the FAA. The district court allowed Norfolk Southern to amend its complaint, and it temporarily lifted the stay for this purpose only.

parties disagreed as to who should decide whether the parties should proceed in district court or in AAA arbitration proceedings. Sprint asserted that the AAA arbitrators convened under Section 20.5 must decide that question while Norfolk Southern contended the district court must provide the answer.

As to the procedural question — who should decide whether Section 20.5 applies to the dispute — Sprint appeared to have won the day in the district court. On August 21, 2015, without explanation, the district court stayed the litigation initiated by Norfolk Southern so that the AAA arbitration demanded by Sprint could proceed. However, the panel of AAA arbitrators then issued a decision favorable to Norfolk Southern. In particular, the AAA panel found that the Majority Decision constituted a final and binding arbitration award, which Sprint could challenge in court under narrow grounds provided in the FAA — and not in subsequent AAA arbitration.[4]

After the AAA panel issued its decision, Norfolk Southern moved to confirm the Majority Decision in district court pursuant to the FAA, and Sprint moved to vacate it. Given the AAA panel's conclusion that the Majority Decision was an arbitration award, Norfolk Southern claimed the only question for the district court was whether the award passed muster under the deferential standard of review outlined in the FAA. It appears that Sprint agreed, because, although it attacked the award on other FAA grounds, it never urged the court to hold that the Majority Decision was not an arbitration award.

---

[4] The AAA Panel later clarified it had no jurisdiction to hear any challenge to the Majority Decision and that "any such challenge on any basis" was for the district court, not the AAA panel, to decide.

The district court granted Norfolk Southern's motion to confirm the Majority Decision and denied Sprint's motion to vacate it. Sprint then noted this timely appeal.

## II.

On appeal, the parties focus their dispute on whether the district court erred in concluding the Majority Decision was a "final" arbitration award under the FAA. Neither party claims that the Majority Decision is not an FAA arbitration award.

A district court may vacate an arbitration award only if the arbitrators "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). Judicial review of an arbitration award is thus "severely circumscribed," and "[a] court sits to determine only whether the arbitrator did his job — not whether he did it well, correctly, or reasonably, but simply whether he did it." *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 478 (4th Cir. 2012) (internal quotation marks and citations omitted). "Every presumption is in favor of the validity of the award." *Richmond, Fredericksburg & Potomac R.R. Co. v. Transp. Commc'ns Int'l Union*, 973 F.2d 276, 278 (4th Cir. 1992) (internal quotation marks and citation omitted). Courts thus narrowly construe grounds for vacatur under § 10(a)(4). *See Wachovia*, 671 F.3d at 478 ("We are . . . hesitant to read any of § 10's grounds for vacatur too broadly.").

Sprint claims the award here was not "final" and so the district court erred in confirming the award and denying Sprint's motion to vacate. In reviewing a district

7

court's confirmation of an arbitration award, we consider the district court's legal rulings *de novo* and its factual findings for clear error. *See id.*

Despite the deferential standard of review accorded to arbitration awards, we must hold that in this case the district court did err in finding that the Majority Decision was a "final" arbitration award. An award is not "final" under the FAA if it fails to resolve an issue presented by the parties to the arbitrators. *See Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 177 (2d. Cir. 1998) (concluding an arbitration award is "final" if it "resolve[s] all issues submitted to arbitration" (alteration in original) (citation omitted)); *cf. Gas Aggregation Servs., Inc. v. Howard Avista Energy, LLC*, 319 F.3d 1060, 1069 (8th Cir. 2003) (suggesting an award is not "final" if conditioned on the outcome of future court proceedings); *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 150 (4th Cir. 1994) (award stating that all claims made by claimant "shall be and are hereby dismissed in all respects" was "final" and "definite" under the FAA).

We have such a case here. Argianas "reserve[d] his assent" to the award "subject to" two "extraordinary appraisal assumptions" — that Norfolk Southern had marketable title and that the ATF value used by Norfolk Southern's appraiser was reasonable. To be sure, an arbitration award can be "final" even if based on assumptions. For instance, the award might have been "final" if Argianas had merely assumed Norfolk Southern held marketable title and then proceeded on the basis of that assumption. However, critically, in the text of the award itself, Argianas reserved his assent "without prejudice or time limitation" if either of these two "assumptions" ever proved to be incorrect. That is, Argianas made clear that he might withdraw his assent — thus dissolving the

8

compromise and the arbitration award itself — at some point in the future. Argianas did not merely base his assent on certain assumptions, but rather *reserved the right to withdraw* his assent if his assumptions proved to be incorrect. This outcome cannot be squared with any conception of "finality." *See Gas Aggregation Servs.*, 319 F.3d at 1069 (suggesting an award is not "final" if conditioned on the outcome of future court proceedings); *Sunshine Mining Co. v. United Steelworkers*, 823 F.2d 1289, 1294 (9th Cir. 1987) (suggesting an award is not "final" where the arbitrator "structur[ed] the award to make it conditional on the results of a future psychiatric examination").

Norfolk Southern does not squarely address the lack of finality resulting from Argianas's "reservations" as to the two "extraordinary assumptions." Instead, it claims these two assumptions have no bearing on whether that arbitration award is "final." This is so, Norfolk Southern argues, because the assumptions — which relate to marketable title and verification of ATF values — do not fall within the scope of what the parties asked the appraisers to decide. *See* 9 U.S.C. § 10(a)(4) (award may be vacated where "a mutual, final, and definite award *upon the subject matter submitted* was not made" (emphasis added)); *Rocket Jewelry Box*, 157 F.3d at 177 (concluding an arbitration award is "final" if it "resolve[s] all issues *submitted to arbitration*" (alteration in original) (emphasis added) (citation omitted)).

Neither Section 2.2.2 nor the subsequent email from the parties clarified the scope of issues to be considered by Argianas when attempting to broker a compromise. Accordingly, the interpretation of Argianas, one of the two appraisers who signed the Majority Decision, as to the scope of issues submitted deserves deference. *See*

9

*Richmond*, 973 F.3d at 279 ("The arbitrator's interpretation of the scope of the issue submitted is entitled to deference and must be upheld so long as it is rationally derived from the parties' submission."). This deference seems particularly appropriate given that neither of the other appraisers appears to have suggested that Argianas's assumptions involved issues not within the scope of his authority. Here, Argianas could have simply concluded that title issues and ATF values were outside the scope of issues he was to consider. Instead, he linked his assent to the Majority Decision to those two issues by reserving the right to withdraw that assent should his assumptions about those two issues prove untrue.

In sum, we cannot conclude the Majority Decision constituted a "final" award under 9 U.S.C. § 10(a)(4).

III.

We briefly address two other issues raised by Sprint that might arise in future proceedings.

First, Sprint claims the district court also erred in confirming the Majority Decision, because it contains an ambiguity rendering it unenforceable. According to Sprint, the Majority Decision's failure to provide clearly that the $6,100,000 amount constitutes an annual payment renders it unenforceable. A court may vacate an award if it is so unclear or ambiguous that the court cannot engage in meaningful review. *See Raymond James Fin. Servs., Inc. v. Bishop*, 596 F.3d 183, 191 (4th Cir. 2010). For

10

example, an award may be ambiguous if it is subject to two opposing and equally valid interpretations. That is not the case here.

The text of the Majority Decision does not explicitly clarify this issue — which certainly would have been preferable — but in context, it is plain that the $6,100,000 amount refers to an annual payment. Other sections of the License Agreement refer to annual payments. The appraisers selected by Norfolk Southern and Sprint, respectively, both proposed dollar amounts that would be paid annually. If the $6,100,000 amount were interpreted as the total amount due over the 25-year renewal period, the resulting annual payments would be a fraction of what the appraisers for both parties proposed. Only if the $6,100,000 represents an annual payment does it fall between the proposals from the two other appraisers and thus provide a basis for the compromise outcome.

Second, Sprint claims that we must vacate the Majority Decision, because Argianas based his decision on an improper reason. According to Sprint, although Argianas believed that the payment amount offered by Sprint's appraiser was more accurate than that offered by Norfolk Southern's appraiser, Argianas nonetheless reached a compromise with Norfolk Southern's appraiser, because Argianas doubted the approach endorsed by Sprint's appraiser would withstand judicial scrutiny.

A court may vacate an arbitration award "if 'the arbitrator acts outside the scope of his contractually delegated authority' [by] issuing an award that 'simply reflects his own notions of economic justice.'" *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (quoting *Eastern Assoc. Coal Corp. v. United Mine Workers*, 531 U.S. 57, 62 (2000) (brackets omitted)); *see* 9 U.S.C. § 10(a)(4). That did not occur here. The

11

Majority Decision addresses the rental renewal rate and bases its conclusions on an interpretation of Section 2.2.2. Moreover, even assuming Argianas based his decision partly on a belief that the appraisal by Norfolk Southern's appraiser could be better defended in court, that does not necessarily mean the Majority Decision "simply reflects his own notion[] of economic justice." *Oxford Health Plans*, 569 U.S. at 569.

IV.

For the foregoing reasons, we reverse the judgment of the district court. We remand with instructions to the district court to vacate the Majority Decision, because it is not a "final" arbitration award under the FAA. Unless the parties agree otherwise, if they continue to dispute the amount owed for the renewal period, they should, pursuant to the Agreement, obtain an arbitration award that is "final" and otherwise complies with the FAA and this opinion. The judgment of the district court is

*REVERSED AND REMANDED.*

12