# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

# 2021 CA 0906

## COASTAL INDUSTRIES, LLC

## VERSUS

## ARKEL CONSTRUCTORS, LLC, SMITH LAROCK ARCHITECTURE P.C. AND THE LEFFLER GROUP CONSULTING STRUCTURAL ENGINEERING, INC.

**Judgment Rendered:** SEP 0 1 2022

\* \* \* \* \* \*

On Appeal from the Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. 649,069

Honorable Wilson Fields, Judge Presiding

\* \* \* \* \* \*

| | |
|---|---|
| Russel W. Wray<br>St. Francisville, Louisiana | Counsel for Plaintiff/ Appellant<br>Coastal Industries, LLC |
| John C. Funderburk<br>Thomas D. Bourgeois, Jr.<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellee<br>Arkel Constructors, LLC |

\* \* \* \* \* \*

**BEFORE: McCLENDON, WELCH, AND THERIOT, JJ.**

Welch, Jr. concurring in part and dissenting
in part and assigns reasons.

**McCLENDON, J.**

In this construction contract case, the plaintiff appeals a district court's judgment that confirmed an arbitration award in favor of the defendant. For the reasons that follow, we reverse in part and affirm in part.

## FACTS AND PROCEDURAL HISTORY

On June 13, 2016, the plaintiff, Coastal Industries, LLC (Coastal), filed a petition for damages against Arkel Constructors, LLC (Arkel), Smith LaRock Architecture P.C. (Smith LaRock), and The Leffler Group Consulting Structural Engineers, Inc., d/b/a The Leffler Group (Leffler). Coastal sought damages from the three defendants arising from the construction of a control building at the Marathon Petroleum Company LP (Marathon) plant in Garyville, Louisiana (the Project). Arkel, the general contractor, had subcontracted with Coastal to perform certain work on the Project (the Subcontract). In its petition, Coastal claimed that Arkel breached the Subcontract resulting in damages to Coastal in an amount no less than $700,000.00. Coastal also alleged that Smith LaRock, the architect, was engaged by Marathon to design the Project and that Smith LaRock contracted with Leffler to perform the structural engineering work. Coastal asserted that Smith LaRock and Leffler breached the standard of care owed to Coastal by providing untimely and incorrect plans, specifications, and modifications that interfered in Coastal's work causing damages.

On July 20, 2016, Arkel filed a dilatory exception of prematurity and alternative motion to stay and compel arbitration, alleging that Coastal's claims fell within the scope of an arbitration clause contained in the Subcontract. Thus, Arkel requested that Coastal's claims be dismissed.[1] Additionally, Leffler and Smith LaRock answered the petition and, thereafter, filed a joint memorandum in support of Arkel's exception of prematurity. Leffler and Smith LaRock requested that the district court sustain the dilatory exception and dismiss Coastal's claims against Arkel, but reject Arkel's alternative motion to stay, arguing that only Coastal's claims against Arkel were subject to arbitration. After a hearing held on May 9, 2017, the district court took the matter

---

[1] Coastal had previously filed its own motion to stay the proceedings pending arbitration, but later filed an *ex parte* motion to withdraw the motion to stay, which the district court granted.

under advisement and, on May 16, 2017, issued its ruling, sustaining the exception of prematurity, ordering arbitration between Coastal and Arkel, and staying the proceedings as to all other parties. On June 13, 2017, the district court issued an order memorializing its oral ruling and ordering that the pending arbitration between Arkel and Coastal be administered by the American Arbitration Association (AAA).

On June 9, 2017, Coastal initiated arbitration proceedings with the AAA. In the demand for arbitration, Coastal attached a copy of its previously filed petition, and stated that "[t]he arbitrator will be called upon to hear claims for delay, disruption, extra work, payments due, and de facto termination-for-convenience damages, along with penalties, interest, and attorney fees in excess of one million dollars."

Arkel filed an answer and counterclaim to Coastal's arbitration demand, specifically asserting numerous delays and errors committed by Coastal, as well as abandonment of the project prior to completion. Arkel further alleged that, as a result, it terminated the Subcontract with Coastal for default and self-performed Coastal's remaining work under the Subcontract. Arkel requested the costs of completing Coastal's scope of work after termination and for payments it made on behalf of Coastal to Coastal's subcontractors or material suppliers that Coastal failed to pay, which resulted in deductive change orders. Arkel asserted that it terminated Coastal's Subcontract for cause under Section 22.4 of the Subcontract, which provided that upon termination, Coastal "shall be liable for all expenses of completing the Subcontract Work." Arkel also asserted a claim for interest and attorney fees under the Subcontract.

The AAA arbitration hearing was conducted for nine days in September 2018. Thereafter, both parties submitted post-hearing briefs, after which the hearing was deemed closed.[2] On December 11, 2018, the arbitrator issued an Interim Award,

---

[2] In November 2018, the arbitrator reopened the hearing pursuant to AAA rules for additional information requested by the arbitrator. The parties submitted the requested information, and the hearing was again closed.

3

addressing the merits and ruling in favor of Arkel.[3]  The arbitrator made several findings, including that Coastal breached its Subcontract with Arkel and that, as a result, its Total Loss Claim was not reasonable.  Accordingly, Coastal's claim of $972,278.72 for Termination Costs was denied.  The arbitrator also found that Arkel had the contractual right to delay or withhold any payments to Coastal when there were questions or concerns as to compliance with the Subcontract; that Arkel was justified in delaying or withholding payments to Coastal; that Arkel's billing and payment methods to Coastal did not violate the Subcontract; and that Arkel did not breach its Subcontract with Coastal regarding its payments to Coastal.  Thus, the arbitrator denied the claims made by Coastal for payment of penalties, interest, and attorney fees.

The arbitrator also determined that when Coastal demobilized from the jobsite, its "scope of work was 95% - 97% complete and invoiced for."  As such, the arbitrator determined that Coastal "substantially performed" its subcontract work under the Subcontract with Arkel and did not default.  The arbitrator found that although Coastal may have technically breached some provisions of the Subcontract with Arkel, "none of them, even all together," rose to the level of a "material breach" of the Subcontract. Accordingly, the arbitrator found no material breach of the Subcontract by either party. Further, the arbitrator determined that Arkel's termination of Coastal was a termination for "convenience," *i.e.*, a "no fault" termination pursuant to Section 22.5 of the Subcontract.[4]

---

[3] The Interim Award did not include qualification of the amounts to be awarded to Arkel for attorney fees and costs, nor did it include the award of arbitration costs or award of arbitrator fees/expenses, which were to be addressed in the Final Award.

[4] Section 22.5 of the Terms and Conditions of the Subcontract provides:

> *Notwithstanding anything to the contrary in this Subcontract,* and in addition to [Arkel's] rights to terminate this Subcontract for breach or default, [Arkel] may terminate all or any part of this Subcontract when [Arkel] determines, regardless of fault, that such termination is in the interest of the Project.  Upon such no-fault termination, [Coastal] shall be entitled to the reasonable, actual direct cost of all Subcontract Work satisfactorily performed and materials purchased prior to notice of termination, plus a single markup of not more than ten percent (10%) for both provable overhead ... and provable profit on completed Subcontract work, plus the reasonable out-of-pocket costs of terminating the Subcontract Work, less (a) any amounts paid by [Arkel], and (b) back charges due [Arkel] with respect to the Subcontract Work.  [Coastal] shall not receive any compensation, overhead, or profit on Subcontract Work not performed or for materials not purchased. Notwithstanding the foregoing, the total sum to which [Coastal] may be entitled in the event of a no-fault termination, including all prior payments made to or on behalf of [Coastal], shall not exceed the adjusted Subcontract price.  [Coastal] shall not

4

Pursuant to Section 22.5, the arbitrator determined that the Adjusted Subcontract amount was $1,765,468.00; that the amounts paid by Arkel on Coastal's behalf, including the performance of Coastal's remaining work (Arkel's counterclaim), amounted to $243,390.95; and that the total amount of backcharges was $129,218.92. Subtracting the $243,390.95 and $129,218.92 amounts, the arbitrator determined that the amount due Coastal under Section 22.5 was $1,392,858.13. The parties had stipulated that $1,437,614.11 was paid to Coastal. Accordingly, the arbitrator awarded Arkel $44,755.98, reflecting the overpayment, plus judicial interest from the date of termination, September 1, 2016. Further, the arbitrator found that Arkel was entitled to reasonable attorney fees and costs, including expert fees.[5] The arbitrator requested that Arkel submit a spreadsheet setting forth the attorney fees and related expenses incurred as a result of the arbitration proceeding, along with sufficient backup information, to the AAA and to him, with a copy to Coastal.

Subsequently, Coastal sought to modify the Interim Award of the arbitrator, asserting "clerical, typographical, technical, and/or computational errors in the award," which was denied.[6] Coastal also filed an objection to Arkel's submission of its attorney fees and costs. Coastal asserted that the redaction by Arkel of the attorney fees invoices sent to Coastal precluded any meaningful review of the invoices in determining the reasonableness of the fees.

---

be entitled to any other compensation or payment of any nature, in the event of a no-fault termination, other than as specifically provided in this paragraph.

The arbitrator also found Section 22.3 applicable, which provides:

In the event of termination of this Subcontract, in whole or in part, [Arkel] shall be entitled to exercise its discretion as to the means and methods for prosecution and completion of the Subcontract Work as [Arkel] in good faith deems to be appropriate and in the interests of the Project, as a whole.

[5] The arbitrator relied on Rule R-48(d)(ii) of the AAA Construction Industry Arbitration Rules and Mediation Procedures, which provides for an award of attorney fees by the arbitrator if all parties have requested such an award or it is authorized by their arbitration agreement. The arbitrator determined that because both Arkel and Coastal requested attorney fees, AAA Rule R-48 allowed such an award.

[6] AAA Rule R-51(a) provides that the arbitrator or any party "may request that the arbitrator correct any clerical, typographical, technical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided."

On February 12, 2019, the arbitrator issued his Final Award, which incorporated the Interim Award, and awarded Arkel a total of $530,574.02. The total amounts awarded were as follows:

| | |
|---|---|
| Principal and Interest | $ 50,037.08 |
| Attorney Fees[7] | $ 408,772.46 |
| Arbitrator's Compensation | $ 30,471.26 |
| Costs of Experts | $ 25,069.13 |
| Other Costs | $ 16,224.09 |
| Total Amount of Final Award | $ 530,574.02 |

On February 15, 2019, Arkel filed a motion to lift the stay and to confirm the arbitration award with the district court. The motion also included a request for additional attorney fees to confirm the arbitration award. On March 14, 2019, Coastal filed its own motion to vacate, correct, and/or modify the award of the arbitrator and *ex parte* motion to stay proceedings to enforce the award. The motions were opposed. The district court heard both motions on May 6, 2019, and on May 20, 2019, the district court ruled on the motions in open court, denying Coastal's motion to vacate and granting Arkel's motion to confirm. The district court also adopted Arkel's briefing as its reasons for judgment.[8]

On August 19, 2019, the district court signed a Partial Final Judgment that lifted the stay; denied Coastal's motion to vacate, correct, or modify the award of the arbitrator and *ex parte* motion to stay proceedings to enforce the award; and granted Arkel's motion to lift the stay and confirm the award. The judgment further awarded Arkel $530,574.02 against Coastal for the sum due in the award; $14,191.40 for additional attorney fees incurred by Arkel to confirm the arbitration award; $5,785.42

---

[7] The arbitrator found Arkel was entitled to recover the full amount of its attorney fees from Coastal in the amount of $408,772.46. The arbitrator specifically found that the attorney fee amount of the award to Arkel was not out of proportion with the principal amount of the award to Arkel because it was reasonable to assume that the vast amount of attorney fees incurred by Arkel were for defense against Coastal's claim rather than for prosecution of Arkel's counterclaim.

[8] The parties could not reach an agreement as to the form of the proposed judgment, and on June 6, 2019, Arkel filed a motion to enter proposed judgment and to set attorney fees. Following a hearing, the motion was granted in favor of Arkel as to the attorney fees requested (except to reduce the paralegal billable rate).

for interest on $525,292.92 (the total amount due in the award excluding interest therein) from March 16, 2019, through May 21, 2019; and judicial interest on $525,292.92 (the total amount due in the award excluding interest awarded therein) from May 22, 2019, until paid.

Coastal appealed. On September 21, 2020, another panel of this Court dismissed the appeal, finding that although the district court's judgment confirmed the final arbitration award of $530,574.02 to Arkel, it did not dismiss Coastal's original damage claims against Arkel. Therefore, this Court held that, in the absence of appropriate decretal language, the judgment was defective and could not be considered a final judgment for purposes of appeal. Accordingly, because the Court lacked appellate jurisdiction, the appeal was dismissed. See **Coastal Industries, LLC v. Arkel Constructors, LLC**, 19-1586 (La.App. 1 Cir. 9/21/20), 313 So.3d 1270.

Thereafter, Arkel filed a motion to amend the judgment. On March 11, 2021, the district court granted Arkel's motion and amended the Partial Final Judgment to include the addition of decretal language dismissing Coastal's claims against Arkel with prejudice.

Coastal now appeals the March 11, 2021 judgment and assigns the following as error:

1. The district court erred in granting Arkel's amended motion to confirm the arbitration award and provide other relief to Arkel;

2. The arbitration proceeding between Coastal and Arkel was fundamentally unfair to Coastal. The district court erred in confirming the arbitration award in favor of Arkel and in denying Coastal's motion to vacate, correct, and/or modify the arbitration award, and did so in violation of the Louisiana Arbitration Law, LSA-R.S. 9:4201, *et seq.*; and

3. The district court erred in granting Arkel additional attorney fees in connection with Arkel's motion to confirm the arbitration award.

7

## LAW AND DISCUSSION

Arbitration is a mode of resolving differences through the investigation and determination by one or more individuals appointed for that purpose. The object of arbitration is the speedy disposition of differences through informal procedures without resort to court action. **Crescent Property Partners, LLC v. American Mfrs. Mut. Ins. Co.**, 14-0969 (La. 1/28/15), 158 So.3d 798, 803; **Preis Gordon, APLC v. Chandler**, 15-0958 (La.App. 1 Cir. 2/26/16), 191 So.3d 31, 35, writ denied, 16-0590 (La. 5/20/16), 191 So.3d 1067.

Because of the strong public policy favoring arbitration, arbitration awards are presumed to be valid. **National Tea Co. v. Richmond**, 548 So.2d 930, 932 (La. 1989). Further, it is well settled in both state and federal courts that an award may be challenged only on the grounds specified in the applicable arbitration statutes. **Firmin v. Garber**, 353 So.2d 975, 977 (La. 1977). In **Crescent Property Partners**, 158 So.3d at 803, our supreme court confirmed that an arbitration award may only be challenged on the grounds listed in the arbitration statutes.[9] Those grounds do not include errors of law or fact, which are insufficient to invalidate an award fairly and honestly made. **Crescent Property Partners**, 158 So.3d at 803-04; **Preis Gordon**, 191 So.3d at 35.

Therefore, misinterpretation of a contract by an arbitrator is not subject to judicial correction. Judges are not entitled to substitute their judgment for that of the arbitrator chosen by the parties. **National Tea Co.,** 548 So.2d at 933; **JK Developments, LLC v. Amtek of Louisiana, Inc.,** 07-1825 (La.App. 1 Cir. 3/26/08),

---

[9] We note that in **JK Developments, LLC v. Amtek of Louisiana, Inc.,** 07-1825 (La.App. 1 Cir. 3/26/08), 985 So.2d 199, 202 and n.2, writ denied, 08-0889 (La. 6/20/08), 983 So.2d 1276, another panel of this Court pointed out that the third, fourth, and fifth circuits had added a jurisprudential ground for modifying or vacating arbitration awards, at least in part, despite the exclusivity of the arbitration laws. A "manifest disregard of the law" was a judicially created ground for vacating an arbitration award by these Louisiana courts and referred to error which was obvious and capable of being readily and instantly perceived by an average person qualified to serve as an arbitrator. The doctrine implied that the arbitrator appreciated the existence of clearly governing legal principle, but decided to ignore or pay no attention to it. See **Robert S. Robertson, Ltd. v. State Farm Ins. Companies/State Farm Fire and Cas. Companies**, 05-435 (La.App. 5 Cir. 1/17/06), 921 So.2d 1088, 1091; **Louisiana Physician Corp. v. Larrison Family Health Center, L.L.C.,** 03-1721 (La.App. 3 Cir. 4/7/04), 870 So.2d 575, 577; **Welch v. A.G. Edwards & Sons, Inc.,** 95-2085 (La.App. 4 Cir. 5/15/96), 677 So.2d 520, 524. However, this Court chose to adhere to the narrow authority and exclusive nature of the statutes governing arbitration awards in light of the purpose of arbitration. See **JK Developments**, 985 So.2d at 202-03. In **Crescent Property Partners**, 158 So.3d at 803, decided in 2015, the supreme court inferentially validated this Court's position that the grounds set forth in the arbitration statutes to challenge an arbitration award are exclusive.

8

985 So.2d 199, 201, writ denied, 08-0889 (La. 6/20/08), 983 So.2d 1276. Such

deference to arbitral awards is consistent with the longstanding recognition that

arbitration is intended to speedily determine disputes and controversies by quasi-judicial

means, thus avoiding the formalities, the delay, the expense, and the vexation of

ordinary litigation. **Mack Energy Co. v. Expert Oil and Gas, L.L.C.**, 14-1127 (La.

1/28/15), 159 So.3d 437, 442.

Under the Louisiana Arbitration Law, a party to an arbitration proceeding may,

within one year after the award is made, apply to the district court for confirmation of

the award, and the court must confirm the award unless the award is vacated,

modified, or corrected. LSA-R.S. 9:4209.[10] The exclusive grounds for vacating an

award are set out in LSA-R.S. 9:4210, which provides, in pertinent part:

> In any of the following cases the court in and for the parish
> wherein the award was made shall issue an order vacating the award
> upon the application of any party to the arbitration.

> A. Where the award was procured by corruption, fraud, or undue means.

> B. Where there was evident partiality or corruption on the part of the
> arbitrators or any of them.

> C. Where the arbitrators were guilty of misconduct in refusing to postpone
> the hearing, upon sufficient cause shown, or in refusing to hear evidence
> pertinent and material to the controversy, or of any other misbehavior by
> which the rights of any party have been prejudiced.

> D. Where the arbitrators exceeded their powers or so imperfectly
> executed them that a mutual, final, and definite award upon the subject
> matter submitted was not made.

Further, with regard to modifying or correcting an arbitration award, LSA-R.S. 9:4211

provides, in part:

> In any of the following cases the court in and for the parish
> wherein the award was made shall issue an order modifying or correcting
> the award upon the application of any party to the arbitration.

---

[10] Louisiana Revised Statutes 9:4209 provides, in pertinent part:

> At any time within one year after the award is made any party to the arbitration
> may apply to the court in and for the parish within which the award was made for an
> order confirming the award and thereupon the court shall grant such an order unless the
> award is vacated, modified, or corrected as prescribed in R.S. 9:4210 and 9:4211.

9

A. Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

B. Where the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted.

C. Where the award is imperfect in matter of form not affecting the merits of the controversy.

A court does not ordinarily sit in an appellate capacity over an arbitration panel, but instead must confine its determination to whether there exists one or more of the specific grounds for invalidation as provided by the applicable statute. The burden of proof rests upon the party attacking the award. **Crescent Property Partners**, 158 So.3d at 804; **Preis Gordon**, 191 So.3d at 36.

Initially, we address Coastal's argument that the arbitrator's entire award should be vacated pursuant to LSA-R.S. 9:4210D, because the arbitrator exceeded his powers. Coastal contends that the arbitrator exceeded his authority by ruling on matters not submitted to him.

Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute to which he has not so agreed. See LSA-C.C. art. 3099. The authority of an arbitrator to resolve disputes is derived from the parties' advance agreement to submit such grievances to arbitration. **Preis Gordon**, 191 So.3d at 36. The scope of submission to arbitration is set forth in LSA-C.C. art. 3102, which provides that "[p]arties may submit either all their differences, or only some of them in particular; and likewise they may submit to arbitration a lawsuit already instituted or only in contemplation, and generally every thing which they are concerned in, or which they may dispose of." The power of arbitrators is limited to what is explained in the submission. LSA-C.C. art. 3104. Further, LSA-C.C. art. 3122 provides that the authority of arbitrators extends only to the things contained in the submission, unless it has been stated that they shall have power to decide all disputes which may arise between the parties in the course of the arbitration. Thus, an arbitration award must conform to the submission. **Preis Gordon**, 191 So.3d at 36-37.

10

In this matter, pursuant to Section 28.1 of the Terms and Conditions of the Subcontract agreement between Coastal and Arkel, "all claims, disputes, and other matters in controversy or question between [Arkel] and [Coastal] arising out of or relating to this Subcontract, including allegations of breach and claims of tort as well as contract" shall be decided in accordance with this Section. Section 28.1.1 further provides that "any and all disputes between [Arkel] and [Coastal] arising out of or related to these terms and conditions and the associated Contract shall be decided before an arbitrator mutually agreeable to both parties." Therefore, following submission of Coastal's lawsuit to arbitration, all "claims, disputes, and other matters in controversy" were within the scope of the arbitration proceedings. See **National Tea Co.**, 548 So.2d at 933.

However, Coastal maintains that the parties' submission to arbitration was "distilled and narrowed" by the arbitration demand and counterclaim, as well as by supplemental specifications of claims and defenses, damage summaries, briefs, and evidence at the hearing before the arbitrator. Particularly, Coastal argues that Arkel withdrew its claim for certain portions of its improper anchor bolt placement backcharge and that, despite Arkel's withdrawal of this claim, the arbitrator impermissibly awarded Arkel the initial amount it sought. Additionally, Coastal claims that not only was the arbitrator's award to Arkel for the cost to complete the Project in excess of his authority, but also that the arbitrator miscalculated the award for Coastal's remaining work, using the amount of $216,682.19 as claimed by Arkel, despite Arkel acknowledging that $19,507.50 of that amount was erroneously included in its demand.[11]

The record before us establishes that the parties were allowed to brief and argue all issues before the arbitrator. The arbitration proceeding was conducted over nine days, where the parties presented considerable evidence and expert testimony regarding their various claims, including the various deductive change orders or

---

[11] With regard to the $19,507.50 amount that Coastal asserts was incorrectly included in Arkel's cost to complete the Project, we note that Arkel requested $216,682.19 for the performance of Coastal's remaining work, but the arbitrator awarded seventy-five percent of that amount, or $162,511.64.

11

backcharges and Arkel's counterclaim. Thereafter, the arbitrator set forth, in his Interim Award and the Final Award, his reasoned findings and calculations. Accordingly, we find no merit to Coastal's argument that the arbitrator impermissibly exceeded his authority, and we find that the arbitration award covered the subject matters submitted to arbitration.[12]

Additionally, Coastal argues that the arbitrator misinterpreted the Subcontract and incorrectly determined the amounts awarded. Coastal specifically claims that the arbitrator erroneously included $44,906.67 as part of the backcharge for improper anchor bolt placement and a $19,507.50 amount as part of Arkel's costs to complete the Project. Coastal's argument is premised on Arkel's acknowledgement that both amounts were mistakenly included in its demand. Coastal also maintains that because the arbitrator found no material breach of the Subcontract, under the specific terms of the Subcontract, Coastal was not liable for Arkel's costs of completion.

However, errors in factual or legal conclusions will not invalidate an otherwise fair and honest arbitration award. In the case before us, the arbitrator made a calculation of damages pursuant to Section 22.5 of the Subcontract.[13] Even were we to disagree with the arbitrator's interpretation of the Subcontract that "any amounts paid" by Arkel pursuant to Section 22.5 included amounts paid by Arkel for the performance of Coastal's remaining work, the calculated amounts were his interpretation of the Subcontract under Section 22.5 following a no-fault termination, and any misinterpretation of the terms of the Subcontract is not subject to judicial correction.

---

[12] We find **Preis Gordon**, 191 So.3d at 37, to be distinguishable. In that case, the issue of attorney fees was never submitted to arbitration, but attorney fees were awarded. Therefore, this Court held that the award of attorney fees by the arbitrator was beyond the scope of the agreement between the parties, and the arbitrator exceeded his powers.

[13] In his Interim Award, the arbitrator found that Section 22.5 of the Subcontract established the following formula for determining the amount to be paid to Coastal following a "no-fault" termination:

> Direct cost of all subcontract work satisfactorily performed and materials purchased prior to the date of termination,
> PLUS
> 10% max OH&P,
> PLUS
> Reasonable out of pocket costs of terminating the subcontract work[,]
> MINUS
> Any amounts paid by Arkel, and
> MINUS
> Backcharges due to Arkel.

<u>See</u> **Crescent Property Partners**, 158 So.3d at 803-04; **National Tea Co.**, 548 So.2d at 933.

This type of substantive review of the arbitrator's findings and interpretations of the Subcontract between the parties is not contemplated within the scope of LSA-R.S. 9:4210 and 9:4211. Again, misinterpretation of a contract by an arbitrator is not subject to correction by the courts. <u>See</u> **National Tea Co.**, 548 So.2d at 933; **Lakeview Home Care, L.L.C. v. Medistar Home Health of Baton Rouge, L.L.C.**, 14-1374 (La.App. 1 Cir. 3/6/15), 2015 WL 997159, at *4 (unpublished). Further, an arbitrator's conclusions drawn from conflicting evidence do not equate to misconduct or use of undue means in resolving disputed facts, and consequently, do not provide a basis for vacating an arbitration award. **Inland Marine Services, L.L.C. v. Hamp's Construction, LLC**, 18-1152 (La.App. 1 Cir. 4/12/19), 2019 WL 1577800, at *3 (unpublished), <u>writ denied</u>, 19-00729 (La. 9/6/19), 278 So.3d 370, <u>cert. denied</u>, ___ U.S. ___, 140 S.Ct. 959, 206 L.Ed.2d 121 (2020).[14]

This was a complicated case, with considerable evidence submitted by both parties. Upon review of that evidence, this Court may have reached different conclusions as to the interpretation of the Subcontract or the amount of damages. However, a court may not substitute its conclusions for those of the arbitrator. **JK Developments**, 985 So.2d at 201. As this Court stated in **JK Developments**, 985 So.2d at 202, referring to and citing the United States Supreme Court in **Major League Baseball Players Association v. Garvey**, 532 U.S. 504, 509-10, 532 U.S. 1015, 121 S.Ct. 1724, 1728-29, 149 L.Ed.2d 740 (2001) (per curiam):

> "When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." The Court also reiterated that "even 'serious error' on the arbitrator's part does not justify overturning his decision, where ... he is construing a contract and acting within the scope of his authority."

---

[14] In **Bergeron v. Patel**, 16-0600 (La.App. 1 Cir. 5/17/17), 2017 WL 2170142, at *8 (unpublished), <u>writ denied</u>, 17-1270 (La. 10/27/17), 228 So.3d 1226, another panel of this Court determined that appellant's arguments that the arbitrator did not account for payments made directly to subcontractors and for certain reductions erroneously considered as extras, did not relate to a mathematical error; rather, the appellant simply sought a different and more favorable outcome on the merits than that decided in the arbitration award. The Court stated that, at best, the arguments suggested a factual error, which the court had no authority to remedy.

Regarding the attorney fees awarded to Arkel, Coastal argues that the arbitrator was guilty of misconduct or misbehavior as set forth in LSA-R.S. 9:4210C, requiring vacatur of the arbitration award. Coastal maintains that the arbitrator accepted and relied on evidence submitted to him by Arkel that was not provided to Coastal. Specifically, Coastal claims that because the invoices for attorney fees submitted to the arbitrator were unredacted, but the invoices Coastal received were redacted, Arkel's *ex parte* communication was prejudicial to Coastal.

The record shows that Arkel submitted, as requested by the arbitrator in its Interim Award, a spreadsheet and other documents setting forth the attorney fees and related expenses it incurred as a result of the arbitration proceeding, along with backup information. In its letter to the arbitrator, Arkel stated that it was sending unredacted versions of all invoices to the arbitrator only, in order to allow the arbitrator to review the privileged description of each attorney charge *in camera*. Arkel submitted the same documentation to Coastal, but redacted the privileged descriptions of the work performed by Arkel's attorneys. In his Final Award, the arbitrator found no inaccuracies or misrepresentations in the invoices to Arkel and determined that Arkel's submission of attorney fees was in order and acceptable.

We find no misconduct or misrepresentation in the manner in which Arkel submitted its attorney fee evidence, which did not constitute an *ex parte* communication by Arkel. Arkel's submission was for an *in camera* review of privileged material to protect confidential information, with Coastal's knowledge, and Coastal was notified that unredacted versions of the invoices were being sent to the arbitrator. Accordingly, we find that Coastal failed to present sufficient evidence that the arbitrator was guilty of misconduct or misbehavior as set forth in LSA-R.S. 9:4210C.

Therefore, based on the decision of the Louisiana Supreme Court in **Crescent Property Partners** and our consistent line of jurisprudence, we must conclude that Coastal failed to establish the existence of any of the statutory grounds mandating

vacatur of the arbitrator's decision. <u>See</u> LSA-R.S. 9:4210.[15] Also, we find no statutory grounds under LSA-R.S. 9:4211, as alternatively argued by Coastal, to modify or correct the arbitration award.[16]

In one of its remaining assignments of error, Coastal challenges the district court's authority to order the dismissal of its claims. Coastal contends that Arkel's initial motion to confirm the arbitration award did not include dismissal as part of its requested relief, and, therefore, Arkel's amended motion to confirm the award was untimely. It is undisputed that Arkel filed its original motion to confirm the arbitration award in a timely manner. However, as previously stated, a prior decision of this Court found the district court's judgment confirming the arbitration award lacked appropriate decretal language. <u>See</u> **Coastal Industries, LLC**, 313 So.3d at 1274. After this Court's September 21, 2020 decision, Arkel's motion to amend the motion to confirm the arbitration award sought the addition of appropriate decretal language, and the district court dismissed Coastal's claims in a final judgment. Therefore, we find no validity in this assignment of error.

Lastly, Coastal challenges the $14,191.40 awarded by the district court to Arkel for attorney fees to confirm the arbitration award. It is well settled in Louisiana that attorney fees are not recoverable unless authorized by statute or contract. **Smith v.**

---

[15] Louisiana's Arbitration Law mirrors the Federal Arbitration Act, which provides identical statutory situations when a district court shall vacate or modify an arbitration award. <u>See</u> 9 U.S.C.A. §§ 10-11. Based thereon, the federal jurisprudence also reflects an "extraordinarily narrow" judicial review of arbitration awards. **JK Developments**, 985 So.2d at 201. <u>See</u> **Oxford Health Plans LLC v. Sutter**, 569 U.S. 564, 569, 133 S.Ct. 2064, 2068, 186 L.Ed.2d 113 (2013) (regarding § 10(a)(4) of the Federal Arbitration Act, which authorizes a federal court to set aside an arbitral award where the arbitrator exceeded his powers or so imperfectly executed them. The United States Supreme Court stated that a party seeking relief under that provision bears a heavy burden and that it is not enough to show that the arbitrator committed an error, or even a serious error. The Supreme Court stated that because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits. Only if the arbitrator acts outside the scope of his contractually delegated authority, issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract, may a court overturn his determination. Therefore, the question is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong.).

[16] This is not a situation where there has been "evident material miscalculation of figures" as provided in LSA-R.S. 9:4211A, which authorizes a court to modify or correct an arbitration award. <u>See e.g.</u> **DeArmond v. E. Jacob Construction, Inc.**, 21-0981 (La.App. 1 Cir. 4/8/22), ___ So.3d ___, ___, 2022 WL 1055594, at *4 (where both parties recognized a mathematical error); **Cole v. Hiller**, 30,397 (La.App. 2 Cir. 4/8/98), 715 So.2d 451, 456-57 (where the appellate court found no error in the district court's modification of the arbitration award to correct the arbitrator's material miscalculations as jointly requested by the parties). <u>See also</u> **Bergeron**, 2017 WL 2170142, at *8 (The type of "evident material miscalculation of figures" contemplated by LSA-R.S. 9:4211 would be one akin to a mathematical error as distinguished from an error in the factual or legal conclusions underlying the arbitrator's award).

**State, Dep't of Trans. and Dev.**, 04-1317 (La. 3/11/05), 899 So.2d 516, 527. In this matter, Arkel requested attorney fees from the district court in its motion to confirm the arbitration award. Section 28.5 of the Subcontract is the section that refers to attorney fees and provides that if the parties "litigate or arbitrate a monetary claim, ... the party found liable in such proceedings will pay the other party's reasonable attorneys' fees." However, the arbitrator specifically found that Section 28.5 was "inappropriate in this matter" and awarded attorney fees under Rule R-48(d)(ii) of the American Arbitration Association. Moreover, AAA Rule R-48(d)(ii) provides for an award of attorney fees by the *arbitrator* if certain conditions are met. Therefore, as Rule R-48(d)(ii) granted no authority to the district court to award additional attorney fees and because Section 28.5 of the Subcontract was found by the arbitrator to be inapplicable, the district court lacked the legal authority to award additional attorney fees. Accordingly, we reverse the district court's award of $14,191.40 to Arkel for additional attorney fees.

## CONCLUSION

For the foregoing reasons, we reverse the March 11, 2021 judgment of the district court insofar as it awarded Arkel Constructors, LLC $14,191.40 for additional attorney fees. In all other respects, the judgment is affirmed. All costs of this appeal are assessed equally between Coastal Industries, LLC and Arkel Constructors, LLC.

**REVERSED IN PART; AFFIRMED IN PART.**

16

COASTAL INDUSTRIES LLC

VERSUS

ARKEL CONSTRUCTORS, LLC,
SMITH LAROCK ARCHITECTURE P.C.,
AND THE LEFFLER GROUP
CONSULTING STRUCTURAL
ENGINEERING, INC.

2021 CA 0906

FIRST CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

WELCH, J., concurring in part and dissenting in part.

I agree with the majority's finding that the district court lacked legal authority to award attorney's fees for the cost of confirming the arbitration award. The majority also correctly states that an arbitrator's award may not be vacated for errors of law or fact. Therefore, although the arbitrator erroneously awarded 75% the cost of completion of the Project to Arkel despite his determination that Arkel terminated Coastal "for convenience" pursuant to Section 22.5 of the Subcontract (which does not provide for cost of completion), this incorrect interpretation of the Subcontract is unfortunately not grounds for vacating the award.

However, the majority fails to recognize that "where the record that was before the arbitrator demonstrates an unambiguous and undisputed mistake of fact and the record demonstrates strong reliance on that mistake by the arbitrator in making his award, it can fairly be said that the arbitrator 'exceeded [his] powers, or so imperfectly executed them' that vacation may be proper." **Nat'l Post Off., Mailhandlers, Watchmen, Messengers & Grp. Leaders Div., Laborers Int'l Union of N. Am., AFL-CIO v. U.S. Postal Serv.,** 751 F.2d 834, 843 (6th Cir. 1985), citing 9 U.S.C. §10(a)(4) (previously 9 U.S.C. §10(d)). La. R.S. 9:4210(D), which is applicable to this case, mirrors 9 U.S.C. §10(a)(4) and requires the district court to vacate an arbitration award "[w]here the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the

subject matter submitted was not made." Like the Sixth Circuit, the Louisiana Second Circuit has also acknowledged that the court may "vacate an award founded on a material mistake of *undisputed* fact unless the party opposing the motion to vacate offers an alternative rational explanation for the award based on the evidence before the arbitrator." See **Cole v. Hiller**, 30,397 (La.App. 2 Cir. 4/8/98), 715 So.2d 451, 456 (emphasis in original), citing **Nat'l Post Off.**, 751 F.2d at 843; **Leon Angel Constructors, Inc. v. Kirk Knott Elec., Inc.**, 36,752 (La.App. 2 Cir. 1/31/03), 837 So.2d 743, 746. Thus, the arbitration award in favor of Arkel must be vacated if it was founded on an undisputed mistake of fact.

The record reveals two separate instances of mistake of fact. The first instance relates to Arkel's counterclaim for cost of completion. Arkel initially sought $216,682.19 for its cost of completion of the Project, but Arkel admitted in its post-hearing brief that "[d]uring the hearing, it was determined that a net $19,507.50 charge . . . was improperly included in its cost to complete calculation. These costs . . . are not properly attributable to Coastal and should be removed from Arkel's counterclaim." Despite that admission, the arbitrator began his cost of completion calculations with the original amount requested by Arkel. In footnote 11, the majority surmises that the arbitrator's award of 75% of the $216,682.19 Arkel sought for cost of completion (which is not authorized by statute or contract) accounts for this oversight. However, 75% of $216,682.19 does not equal the $19,507.50 mistakenly charged. Thus, I find that the arbitrator should have begun his cost of completion calculations with the reduced figure, or $216,682.19 minus $19,507.50. If the arbitrator intended to reduce the amount requested by Arkel for cost of completion, he would have certainly said so.

The second instance concerns the alleged backcharges related to improper anchor bolt placement included in Arkel's Deductive Change Order No. 6. Arkel originally claimed $89,030.67 but later conceded that it "has since refined and

reduced the amount requested in [] Change Order [No. 6]" during the course of this arbitration. This is supported throughout the record. Pertinently, Arkel's pre-hearing damage summary does not include a claim for cost of delay related to improper anchor bolt placement although such a claim was included in the original Change Order. Instead, evidence introduced at the hearing demonstrates that the damages from delays associated with improper anchor bolt placement are subsumed in Arkel's claim for general delay damages caused by Coastal in Change Order No. 6. Thus, only $44,124 in backcharges associated with improper anchor bolt placement remain, as is reflected in Arkel's damage summary. However, the arbitrator's award related to improper anchor bolt placement appears to include delay damages, resulting in double-recovery for delays attributable to Coastal, and awards Arkel with the total amount it initially claimed rather than the $44,124 requested by Arkel.

Each instance is an example of a mistake of undisputed fact. Neither party disputes that these reductions are incorrect or unsupported by the evidence. Further, Arkel, as the party opposing the motion to vacate filed by Coastal, cannot be said to have "offer[ed] an alternative rational explanation for the award based on the evidence before the arbitrator" since it admitted to both reductions in the record. In turn, the record demonstrates that the arbitrator "strongly relied" on these incorrect figures, i.e. mistakes of undisputed fact, in crafting his award.

Rectification of these obvious errors would result in a net award in favor of Coastal rather than Arkel. Applying the $19,507.50 reduction to Arkel's cost of completion claim, the amount requested by Arkel is adjusted to $197,174.69. Since the arbitrator chose to only award 75% of the amount claimed by Arkel, the correct award for cost of completion would be $147,881.02. This figure plus the amount in Change Orders Nos. 7 through 9 brings the total amount paid by Arkel to $228,760.33. Next, adjusting the claim for improper anchor bolt placement to

$44,124 results in a modified amount of backcharges totaling $84,312.25. Therefore, the corrected calculation of the award is as follows:

| | |
|---|---|
| Adjusted Subcontract Amount | $1,765,468.00 |
| Minus Amount Paid by Arkel | $ 228,760.33 |
| Minus Backcharges | $ 84,312.25 |
| **Amount due to Coastal per Sec. 22.5** | **$1,452,395.42** |
| Minus Stipulated Amounts Paid to Coastal | $1,437,614.11 |
| **Net Amount Owed by Arkel to Coastal** | **$ 14,781.31** |

Additionally, the arbitrator's award of attorney fees to Arkel was clearly founded on his erroneous determination that Arkel is the prevailing party, thereby rendering the entire award questionable at best. Accordingly, I find it necessary to vacate the arbitrator's award rather than simply modifying it.